I do not plan on spending a lot of time up there recording, but there are a few briefs and know the issues. There are two primary issues in the case. One is based on a racist use of conduct, whether it applies or the statute of limitations applies. The other is whether the conduct that's alleged rises to the level of an adverse employment action. Between the time that we filed our last amended complaint in federal court and the request to Judge Gilbert for a subsequent amendment, there were acts that we considered to be retaliatory and discriminatory that were perpetrated against Ms. LaRiviere. We then asked to amend. Judge Gilbert denied. We dismissed, and we filed under ICRA here in state court. There are two things, and then, of course, the defense raised the issues which I'm now talking about. There are two things that are completely clear, absolutely clear. One, Judge Gilbert got the statute of limitations wrong with regard to the ICRA claim. It was two years, and his order says something about 90 days or 180 days. Was that order appealed? That order was not appealed, and I understand that that's an issue that the court may want to discuss, but we were under no obligation at that time to appeal it because the issues, as I'll talk about in a moment, with regard to the continuing violation, allowed us within the timeframe to bring this cause of action because we're going to claim that the second point that Judge Lopino, in his clearance case, did not approach is that in this particular case, he never talked about the retaliation claim. The only claim that he talked about was the discrimination claim, and that's why res judicata cannot apply in this case because we were subject to a continuing violation, a continuing harm, a continuing wrong, and we based that on, obviously, the allegations, the new allegations that were made, and also based on the stuff that was previously submitted in the federal case. So, and I'll talk about this in a moment, we're talking about a continuing tort, a continuing method of retaliation directed to Ms. LaRiviere. Now, in the brief, we discuss what those are. They include, for example, a change in her job description. There was a point at which she was eligible for a job that was immediately above her. She had performed that job on numerous occasions. She was the person that actually did that job when the boss was no longer around. She performed that job. It was open, and they changed the job description, specifically reclaimed, to make sure that she could not get it. Shortly thereafter, they changed her job description, and that was a, it was essentially a demotion in that it restricted her job duties, and it also restricted the number of people over which she had control. And this all stemmed from two particular instances where she brought to attention during the hiring process that the school had not, in her mind, because she was on the committee, had not appropriately applied the Affirmative Action Program, its own Affirmative Action Program. So, if I can, I want to talk for a moment just about the Feltmire case, which is in the brief. In that case, the court stated, under the continuing tort or continuing violation theory, where the tort involves continuous or repeated injurious behavior by the same actor, or similar in nature, the limitations period is held in abeyance, and the plaintiff's cause of action does not accrue until the date the final injury occurs or the tortious act ceases. So, when we amended, or when we brought the new action in state court, we had new allegations that were a continuation of the prior wrongful conduct and retaliation directed against her. A continuing tort involves viewing the defendant's conduct as a series of tortuous acts amounting to a continuous hold. That's in the Feltmire case, which, by the way, is an emotional distress case, which you can claim is a pretty tough case to make also. Now, I'm going to apologize in advance, because I think I may have not put this case in the brief, and I apologize. There's a case out there, it's a 2014 case called Taylor v. Board of Education, 2014, fill-out, first, one, two, three, seven, four, and in that case, there was a teacher who was made to, and I'm going to quote for a moment, made to undergo humiliation in front of his peers and subjected to repeated questionable disciplinary censure with little or no opportunity to respond. Did you notify the other counsel? I did not, and I'm doing that now. I just actually saw it last night. So, you're filing a motion then to add additional? I am, indeed. I wrote a motion. If you... If that's the case, then what we usually do is we allow you 10, you can file your motion now, and then we'll give you 10 days to reply, counsel, if you'll have an additional 10 days. Do you want to file your motion... I do. ...setting out what your, the new case, and we'll give counsel for the defense. And we'll grant your oral motion to sign additional authority with this Taylor case, and then we'll give opposing counsel 10 days to reply if you'd like to. Because I know it is not cited. I thought I might have not cited it, so I apologize for that. Obviously, the Illinois courts borrow from the federal courts when it comes to what the strictures and principles are in retaliation and discrimination cases. The adverse employment action aspect is much different in a retaliation case than it is in a discrimination case. And citing from Hofelt, which is a case we both cited from, the plaintiff shows a reasonable employee would have found the challenge action materially adverse, which in this context means it might well have dissuaded a reasonable worker from making or supporting a charge of discrimination. Every single thing that we claim in that complaint is something that I think, and certainly since we're at the pleading stage, and all inferences are supposed to be supportive of the plaintiff in this case, that those certainly amount to something that an individual would be dissuading a reasonable worker, dissuading from making or supporting the claim, which she did by claiming that they violated their affirmative action program. Now, we know that with regard to the discrimination claim, what adverse employment action is, and that's cited in the Owens case, which I cited to you, and that includes termination of employment, which we do not have, a demotion evidenced by a decrease in wage or salary, which we do not have, a less distinguished title, which we do have, when she was demoted and the job change occurred, significantly diminished material responsibilities, which we absolutely have, when we claim that the job description was changed unilaterally, such that she lost her responsibilities and her oversight of her personnel, or a significant number of personnel. And back to the Hofelt case, and this is the difference between discrimination and retaliation when it comes to this. An act would be immaterial in some situations when they are material in others. The significance of any given act of retaliation will often depend on the particular circumstances. The defendant has claimed that there was a bright line test with regards to the oral reprimand, for example, that was given to Ms. LaRiviere, and is part of the claim that was made in the state cause of action. But when you take it into totality of the circumstances, it is nothing more than a continuation of the retaliation and a hostile work environment that was created for her, especially in line with all of the other things that we have alleged. In fact, in Hofelt, this lady was given a less desirable assignment, very similar to the motion that Ms. LaRiviere suffered in her case. In Hofelt, the court stated that the entire pattern, in that case a harassment case, of harassment had to be considered. And they further stated that the petitioner's complaint clearly alleged that harassment was in retaliation for her prior opposition, her prior opposition to the alleged harassment, which is exactly what we have here. Her prior opposition to the failure to properly apply the affirmative action program, from that prior opposition she has suffered innumerable, we submitted what we believe to be innumerable wrongs. It is continuing to work. In Hofelt, a hostile work environment results from the cumulative effect of individual acts, exactly what we have alleged here. And all incidents comprising a hostile work environment are part of one unlawful practice. And the city, in that case, is liable for all of the acts. It is, we maintain, that the prior alleged materials in the federal case are properly pled because they are the foundation upon which the new pled claims are made, including those that are found in the affidavit that she submitted in opposition. I'm not abandoning any of the other arguments that we make. Again, since this is a pleading stage, all inferences are in her favor. All we ask is that you allow her her day in court. Thank you. Thank you, counsel. Thank you. Good morning. May I please support counsel? Your Honors, Mr. Ezra just asked you that all he's asking for is to have his client's day in court. The issue is she already had her day in court. And her remedy was to appeal the federal judge's decision. She had that remedy. She chose to forego it and to forum shop and to try and get a different result in a different court. And the rules simply don't allow for that type of procedure. And that's why we're here. So he talked about the two issues, res judicata and whether there is a material adverse action sufficient to allow a claim to go forward, but then sort of moved into this whole idea that there was a hostile work environment claim that had been pleaded in the circuit court action. And so that should be allowed to proceed because it was not going wrong. There are a couple of reasons why that just does not work. So first of all, in the circuit court complaint, if you look at it, he does not even plead the elements of a hostile work environment claim. The elements, as I'm sure you all know, require that he plead that the harassment was based on race, that the harassment was severe and pervasive so as to alter conditions of her and that there's a basis for employer liability. He doesn't make those allegations. What he does is he, she makes this sort of, throws everything in the kitchen sink, all of these allegations together and says, here's how she was discriminated against. And examples of how she was discriminated against include, and in the very last long litany of events, he puts at the bottom of it, she endured a hostile work environment. Well, that's just not enough. That's just a conclusory allegation that doesn't meet the Illinois fact pleading standard. Under, I believe it's the Coughlin case, Illinois requires that you plead facts sufficient to state your case, to state your claim. And he doesn't do that for the hostile work environment claim. But let's suppose, just for the sake of argument, that he does state a claim for hostile work environment. That claim still is not permitted to go forward because he has essentially conceded in his brief that that claim could have been brought in the prior court, in the federal court. And therefore, it would be res judicata because we know from the Highland Park case that any claim that could have been brought in the first action, regardless of whether it was brought or not, cannot be brought in a subsequent action because that would be considered res judicata under the principle of res judicata. So if you look in his brief, on page 18, in the middle, he talks about this new hostile work environment claim. And he says, she filed a new complaint on December 6, 2013 in state court alleging a new legal claim resulting from a continued pattern of retaliatory conduct in a hostile work environment. And here's the key. Which was the factual basis of her original complaint. Her state complaint related back to her timely filed federal complaint, again, as it arose out of the same conduct, occurrences, or transactions alleged originally. Which means he's conceding that claim could have been brought in the federal court, and therefore, it is res judicata. Even if you don't buy that argument, it still fails because in order for this hostile work environment claim to move forward, he has to allege a timely, material, adverse action in order for all the prior stuff to be considered reanimated, so to speak, under the continuing violation theory. And he can't do that because the only alleged adverse actions that he puts in the complaint have all been held as a matter of law to be insufficient to state as a material adverse action. And he's saying, well, you've got to look at it in the totality. And he's alleged in his brief that the court didn't use the right standard for retaliation. The court only looked at discrimination, but not retaliation. I don't think that's right. And all of the cases in our brief, as I'm sure you're familiar with, allege, those are all retaliation cases. In other words, they're using the standard that he's telling you. He's telling you that the standard is that it would dissuade a reasonable person from filing a charge. All of these cases that are cited in our brief that talk about whether an adverse action can be, or whether an action can be considered a material adverse action, those are all in the context of retaliation. And the courts have said, these specific things do not qualify as a matter of law. The oral reprimand does not qualify as a matter of law. He talked about her job title being changed. That's actually not even in the record. That's not part of what happened. Her job title remains the same. In fact, she's working today, as I understand, in the same job title that she has had for however many years she's been working there. She still works there today. So if we're going to talk about remanding the case, we need to think about what is there for us to argue over. She still has her job. She still makes the same amount of money. She has the same job title. She has not experienced any adverse material action that can be litigated at this juncture. There just hasn't been anything that's happened to her. She's argued, you know, a couple of things like, well, so-and-so went around me and tried to circumvent my authority. But again, we have in the briefs these cases that say that's just not enough. So that is pretty much the response to his arguments. The Feltmire case that he's relying on is a domestic case. It's not an employment law case. And if I'm not mistaken, I don't even think it's a res judicata case. So it really doesn't have any application here. It talks about a continuing wrong, but it talks about it in a totally different context and not in the context of res judicata, which is what we're talking about here. The Hofelt case, which he is relying on, also, it was a bit misleading. The Hofelt case talks about taking all of the adverse actions in their totality. I'm sorry, all of the actions that happened to the plaintiff in the totality of the circumstances, and you have to kind of consider everything. But again, Hofelt isn't talking about actions that would be res judicata otherwise. And Hofelt actually talks about that it has to be specific to the plaintiff. In other words, it's not just that somebody's job was changed a little bit. What Hofelt said was, and I think he even gave this example, that if somebody changes the job of the plaintiff to working nights instead of working days because they know the plaintiff, that that would be unavailable for the plaintiff because they have kids and they need to be in a daytime job. That could be considered retaliatory because it's very specific to the plaintiff. We don't have those types of allegations here. That's just not what we're talking about. He also sort of, and I don't want to belabor the point, but I do want to respond to the argument that he said that they're under no obligation, they were under no obligation to appeal that, the dismissal of the ICRC claim because it was this continuing wrong. Again, there is no case law that supports that theory. In fact, all of the case law is adverse and contrary to that. What the case law says is, as you know, that if a claim has been brought, you can't bring it again once it's been involuntarily dismissed. And I think he's tried every which way from Sunday to try and revive that claim, but none of these theories work. Particularly in the brief, he mentions the statute 735 ILCS 217, and he says, well, that statute allows us to refile the claim because you can refile claims under that statute. Again, that statute is totally inapplicable. What that statute says is that a plaintiff can refile a claim if their claim had been dismissed because of lack of jurisdiction or lack of venue. That's not what happened here, so that statute is completely inapplicable. The recurring wrong I do want to address, by the way, I guess one last point. He relies on the Rain v. Noya Supreme Court case to support this theory that it's a recurring wrong and that there should be some sort of exception to res judicata. And I just wanted to make the court aware that that is not what that case says and that there is no exception here, even if you believe that's what it says. That Rain case, along with the City of Chicago case, Hudson v. City of Chicago, both of those cases talk about this idea of claim splitting, which is a subset of res judicata. And they talk about the exceptions to claim splitting, and claim splitting is when you file one action in one court and then you dismiss some of those claims and try and file those same dismissed claims in another court. Again, that's not what we have here. We have a plaintiff who filed a claim, an IPRA claim in federal court, got it involuntarily dismissed with prejudice and is now trying to bring that exact same claim. He's not trying to split a claim. It's the exact same claim. So that Rain case is totally inapplicable for the exception that he is asserting it for because we're not talking about claim splitting. So unless the justices have any questions, I think that responds to what I wanted to respond to. Thank you very much. And counsel, if you want to submit anything on the Taylor case side, you have 10 days to do that. Yes, we would like to do that. Thank you. Thank you. Rebuttal? Thank you, Your Honor. Very quickly. I was thinking while the counsel was talking, I used to do a lot of FALA work, and if I had an FALA claim in state court, I'm sorry, in federal court, and there were new allegations that arose, even in a retaliation claim, which has allowed them to be FALA, and the statute of limitations had not run, I could take that case out of federal court, and even if I dismissed it, I could take the case out of federal court and put it in state court because the statute of limitations had not run. It's a three-year statute of limitations. I could take it out of state court, out of federal court, and bring it in state court because there are new allegations, and the statute of limitations had not run. It's the same here. What is occurring here is that there are new allegations that are being made. The statute of limitations never ran whatsoever on those new allegations. Even if we wanted to amend, and we did, and we wanted to include these new things that were denied, the statute of limitations had not run on those, and nobody knows what those allegations were because we didn't make them. When we brought them here in state court, they are completely new, different. The statute of limitations had not run, and the prior stuff, the prior activity directed to her, is the foundation upon which the subsequent stuff that is within the statute of limitations was based. That is perfectly allowed. Ms. Daly talked about the material aspects of the job. Clearly, first of all, we're in the pleading stage here, so there is no completely developed record, but I can tell you that we've alleged that there were material aspects of the job that were altered for an employment action. In fact, that's what is alleged. The job description was substantially altered, unilaterally resulting in a demotion. The creation of a work environment whereby a plaintiff is not allowed to match the crew of 38, which he had before, and undermining her authority by giving her conflicting directives. The affidavit, similar to what we had in Taylor, humiliated her not only with her laterals and her superiors, but also with those that she was called upon to oversee. And then, of course, the reprimand, in addition to the humiliation in the environment, which is exactly what Taylor talked about. This is not new. This is not stuff that could have been brought in the prior claim. It was brought here because the statute of limitations was appropriate, and it is a continuing tort. Thank you. Thank you, counsel. We will take this matter under advisement, and the court will be in recess until 1.